Your Honor, good morning. May it please the Court, my name is Katherine J. Sundwall. I am appearing on behalf of Petitioner Christine Chen. I would like to reserve two minutes of my time for rebuttal. Ms. Chen comes before the Court as to the denial of her asylum application. There is no question here as to her credibility or the merits of her claim. She was included upon arrival to the United States as a derivative of her husband's application. This essentially told the one-year filing period against her. The sole reason her own independent asylum application was denied had to do with the determination on this one-year filing requirement. It was concluded that she did not establish extraordinary circumstances that would excuse an untimely filing of her application. This was at the Board's decision on pages 5 and 6 of the record. We know what the decision is. At least from my perspective, your client is in somewhat of an awkward position. The IJ treated her as a de facto client of her husband's attorney, and the BIA rejected that, and then said she had the burden to proceed. She could have filed her own asylum application. She didn't, but she did that on advice of her husband's attorney. Then matters were compounded because she didn't get notice, nor did her husband, so there's a lack of notice. Now, we have a case, because this is not a listed extraordinary circumstance, but we've held in one case where there's, I keep forgetting the name, but it's Judge Pius's opinion in the fraudulent conduct by a non-attorney. So we've said there can be non-enumerated extraordinary circumstances. So what your theory is, what's the extraordinary circumstance here that we would be creating to justify this that it wouldn't open the door to anybody who got some ill-advised recommendation and then slept on her rights? So that her actual claim as to extraordinary circumstances was always one of lack of notice. That was discussed before the immigration judge and also before the board. She knew that her husband lost contact with his lawyer, right? In the record... I'm sorry, is that a yes or a no? Yes. That's an and. I don't know what an and means. It's a yes, right? That is correct. So she gets advice from the husband's lawyer, and they're waiting for determination on that asylum application. At some point, the husband can't get a hold of the lawyer anymore, right? They lose track. At that point, she doesn't check up on the application. She doesn't call and see what the status is or anything like that, right? She just lets it go. On the record, the... Is that right? It is correct, but attempts were made to contact the attorney. I'm sorry? Attempts were made to contact the attorney, though, both before and after... But they weren't successful. They weren't successful, so it's not... At that point, she knew for sure that whatever notice the lawyer got wouldn't be communicated. I don't know if they had that assurance. They had also received a separate assurance from the attorney. That's a pretty good risk, right? What was that? I'm sorry? Pretty good risk when a client can't get a hold of his lawyer, that whatever is then communicated to the lawyer is not going to reach the client. That's a pretty good risk. The client had also been told, though, Ms. Chen's husband, that his attorney would notify her when a decision was made, and that was never accomplished from the BIA or by the attorney. So what's the extraordinary circumstance here? Why isn't this just another client who slept on her rights? She didn't sleep on her rights. When did she actually learn that the husband was denied? When he got picked up, right? Yeah, Ms. Chen and her husband finally were actually instructed, you could say put on notice, when her husband was apprehended outside their company restaurant. And what date was that? That was February of 2008. And when did she file? She filed shortly thereafter in August 2008. Shortly is very indefinite, but how long? That filing, though... Wasn't it six months later? It was six months later, but that was also due to the... What excuses are for that six months? Sure. It's not a tolling. You know, the excuse is not a tolling. It's not like you sort of cut it out. So we say while the application is pending, and maybe while she's getting notice, we exclude that time. But it's not a tolling provision. As soon as she gets notice that she's out of time, she needs to move quickly. Right, and that notice was given to her when she first learned... When she finds out her husband gets picked up, right? In February of 2008. What is the excuse for the six months wait after that? Sure. She was first put into proceedings a few weeks later in March with the service of an NPA. Okay, what about those few weeks? What's the excuse for those few weeks right there? She retained an attorney and went before the immigration judge in May. The immigration judge told her specifically not to file the application until the second hearing. She inquired as to whether she could file it by mail even with her attorney. The immigration judge told her to wait until the second hearing, and it was scheduled in August. What is the reason for the weeks before she gets to the IJ? What is the excuse for that? What's unusual? I would submit that even... I mean, she has a duty once she finds out. Of course. She has a duty to move promptly. Right. But even if it were the six-month filing, that timeframe in preparing her own independent asylum application, that timeframe has still been found to be reasonable under the circumstances by this Court. What if he had been arrested in February of 2009 instead of 2008? Could she have waited that long? I would still submit that her timeframe triggered when she first learned of the denial of her husband's appeal. So five years. There's no outside limit under your submission. Five years from what, Dan? Five years from their discovery that he had lost his appeal to the BIA. No, they discovered that... They discovered that when he was arrested. In 2008. So my question is how long would the non-arrest operate to excuse her affirmative action to file her claim? I mean, under your submission, it's open-ended, I take it. Right, and I guess... Ten years. Not necessarily ten years. Of course not. Other line. I still submit that the... Just the other side of your client, right? What's that? Just the other side of whatever your client did. I guess that's where we draw in this statutory argument that the government contends was not exhausted before the Board. And do you have an answer? Can I just get a clarification on your last answer? I'm losing track of the triggering event. She was writing on her husband's petition. Correct. So she was derivative, and she was relying on that period until his petition was denied not to file. And is the BIA adverse to your client for having done that? They didn't fault her for waiting at that point, did they? I would submit that they... And that's where the BIA decision errs as well. They claim that she made a tactical decision to rely on her asylum application, but this was a reasonable reliance. Okay, so your argument is you'd like to win on that, that she was reasonable in waiting, but then the BIA, did they not say, and that's what I want to understand with this, there is a limit on your time frame. Once she and her husband both got notice at the same time that he'd been denied, is that when the BIA started calculating her lack of diligence at that point? The BIA and the immigration judge, they determined that she should have inquired us to the status of the case, and that upon the denial of the appeal of her husband's case in August of 2006, that is when this one-year filing began. Okay, so it was told, in effect, as far as the BIA is concerned. It was told. Now, what you're saying is that why didn't she file, as my colleagues have said, why didn't she file within two weeks or whatever at that point, once she knew that she was... She didn't know what the BIA would say, I understand that, but at that point of time, how did she act diligently? She retained an attorney. She went before the immigration judge, requested to submit her application, stated that she had intention of filing her own independent claim of asylum, which, again, has been found to be legitimate on the merits. Shortly thereafter, the judge prescribed a schedule for filing, which was in August. She submitted within a reasonable time, as has been found by this board, of the six-month period. All right. So you're not asking for five years, you're asking for a reasonable time from the time she learned that her husband's application had been denied. Correct. But your argument is capable, depending on, I think this was what Davis was asking, if he had gotten arrested a year later or two years later, the argument would apply that much later as well, right? Which is why we have the constitutional claim and the statutory argument. Which are not exhausted, right? I would submit that they are. The burden that has been placed on an unrepresented derivative applicant, one that is clearly affected by her husband's application, is great. Much greater than, I would say, much greater than the burden of, say, the Board of Immigration Appeals in having to simply cc her, copy her specifically as a party to the action of the decision itself. She was entitled to this lack of notice directly. She shouldn't have had to depend on her husband's attorneys, which she was not represented by. But was that raised before the BIA? We would submit that it was. On page 22 of the record, and I see that I'm over time here, on page 22 of the record, the argument was made in appellant's brief to the BIA. 22, you said? Yes. Where? If I could look. It's near the first paragraph, where it says that neither Mr. Chen's, or sorry, Ms. Chen's husband never received notice of the board directly from the BIA, nor from his own attorney. Right. But your argument is that she should have received notice separately. But the BIA should have. You're talking about the fact that the, that Mr. Chen, Ms. Chen's husband didn't receive notice. Where do you argue that she was entitled to notice, that she herself separately was entitled to notice? I don't see it on page 22. Right. And this board has found that even if, even if the actual claim, let's say, of due process isn't specifically spelled out, or the statutory argument isn't precisely listed, that the overall argument was still made throughout proceedings. I don't see it at all. The whole claim was lack of notice. I don't see it at all. Well, the fact that she was unrepresented, that's without question. The fact that she obviously had some duty to file her own asylum application upon finding that her husband had been denied. Because her husband received a copy of the BIA dismissal from an attorney, and the attorney did not return calls. It doesn't say she was entitled to, and she did not get notice separately. Anyway, I think we understand your position. We'll hear from the government. Okay, thank you. Good morning, Your Honors. Indy Tanna, Twin Law for the Attorney General, Eric Holder. The record evidence in this case does not compel reversal of the agency's conclusion that Ms. Lomeno's extraordinary circumstances were intentionally created by her own action or inaction. Your Honors, I'd like to try and respond to some of the questions that you posed to opposing counsel in the same order. Judge Fischer, regarding your question, I believe the case that you're referring to is Veridiana versus Holder, a 2011 case. It's a 2011 published decision. And to answer your question, in that case, the court did hold that the relationship between the immigrant attorney – sorry, the immigration consultant and the petitioner could potentially be an extraordinary circumstances because the list of extraordinary circumstances listed is not explicit. Well, I know what the case held. It said that – found or held that you can – there are unenumerated extraordinary circumstances, and they crafted a label for it, if you will, of fraudulent immigration consultants. That's category, which incorporates a fraudulent element. So it narrows down the universe of this advice. In this case, I don't think there's any allegation of fraud on the part of the husband's attorney. IAC, yes. That's what the IJ went off on, essentially an implied attorney-client relationship. The board didn't accept that, and the IJ rejected it because it didn't follow the procedures of Lozano. And she would have had probably a tough time bringing a malpractice claim against her implied attorney. So the question is what happens in this case is what happens when a woman with a valid claim, a credible claim of persecution, understandably relies on her husband's lawyer who says, I can take care of it. You're derivative. You don't need to go through that. And then he flakes out on them, maybe committing ineffective assistance vis-à-vis her husband, and then derivatively or connectedly for her. But she doesn't quite fit in that, and she's denied that there was an attorney-client relationship. So where does this fit? It's not as if she doesn't have some valid claim. She's been granted withholding of removal. Yes, Your Honor. It's a troublesome question, but she may on her facts have a compelling case. The BIA said she doesn't because she could have filed a protective application, but she was told by this lawyer not to do it. So that's the problem we're confronting here. Yes. My response to that, Your Honor, would be twofold. I'd just like to point out, first of all, that Ms. Lomeno was granted withholding of removal by the agency, and that's a decision that the government and DHS are not contesting. So Ms. Lomeno does have some relief in this case and is not going to be removed from the U.S. based on that type of relief. Second, in distinguishing Veridiana from the case, in that case, Ms. Veridiana, the record undisputably shows that not only did she hire an attorney shortly after her arrival, or sorry, the immigration consultant shortly after her arrival in the U.S., but Ms. Veridiana contacted this immigration consultant several times over the course of that year, the one-year period. Not only did she phone, but she made appointments to speak with that immigration consultant, went to the office, and based on all those facts, which are in drastic, in contrast to the facts in this case, where we have an individual who obtained a tertiary education in Indonesia, there's not a language barrier. She admits in the record on page 252 in her own affidavit that shortly after her arrival in the U.S., she had a consultation with the husband's attorney and was informed about the one-year bar. She's not claiming that she didn't have any knowledge about the one-year bar. She's not saying that. She's saying the attorney then advised her not to do anything. Yes, Your Honor, she's claiming that, and then she was in immigration court when the immigration judge denied her husband's application. She still decided at that point not to file her own. She had a separate and complete claim. I'm sorry. Are you referring to what counsel said, the proceeding with the IJ? According to counsel, as I understand it, the IJ said don't file. As far as I know, I believe in the record she says that she met with the attorney after the IJ denied her husband's application. At that point, they decided to still rely on the husband's 589 application. So when did the husband? I thought we'd been talking about this, that the husband and your Ms. Chen learned that his claim had been denied. Yes. And he was picked up. He didn't learn about it in an IJ hearing, did he? Yes, Your Honor, that's absolutely correct. But the point, I guess, the agency that I'm trying to maybe inarticulately make is that over the course of this entire period, she was aware that her husband's application had been denied by the IJ, was pending before the board, and she had her own claim this entire time that she knew that there was a one-year bar for asylum applications. I'm sorry. So I'm losing track between the two of you of the chronology. He's picked up. Yes. Okay. And that's when they learned that the application of her husband has been denied. So she's no longer got a valid petition to hang on to. That's correct. Okay. So then when does the – when they go before the IJ, at that point, she now has a one-year bar running, let's assume, and she has the opportunity now to file her own asylum claim. If I might just interject, Your Honor, the point I'm making is that she could have always filed her asylum application because her one-year enters upon her last entry to the U.S. So she entered the U.S. on April 10, 2003, and her one-year bar would have been April 10, 2004. The board told the period when she was under her husband's application, but there's absolutely nothing that would have prevented her, and she doesn't claim that she was prevented from applying for her own asylum application. During that time period. Exactly. But there's a changed circumstance. That's what she's arguing. A, she had a lawyer who told her not to file, that it didn't – it wasn't necessary. That's ineffective assistance of counsel. That's how the IJ treated it. Okay? So that's dealing with the advice she got. Okay, then there's the problem of what does she do when she learns? According to counsel, she was advised at that point by the IJ in the first appearance. Yes, Your Honor. To defer filing anything until a second hearing. Is that wrong? I'm not entirely clear, and I don't recall that. I apologize if maybe counsel could pinpoint the page in the record. But just to clarify, Your Honor, even though the agency – the agency didn't look at the six-month period that you're referring to. So I believe you're asking the period when she first knew that her husband's application had been dismissed by the board, which was in – sorry, when he was picked up in 2008. Yeah. And then when she filed the six-month period. But in the instant matter, the time period that the agency looked at was the two-year period, almost two-year period, which is when the agency denied his application, which was in August 2006. Which they didn't know about. Yes, Your Honor. But then there's a – So there's a lack of notice. Well, yes. And the agency says on page six of the record, irrespective of this potential – Do you agree there was a lack of notice? Do you agree that notice to the attorney is not operative as to either the husband or Ms. Lumina? Well, it is operative, Your Honor, as to the husband, but not Ms. Lumina because that was not her attorney, and that's the finding that the agency makes. So do you agree that she – that the operative time is when she received actual notice by virtue of her husband's arrest? That's not the finding or the holding that the agency made, Your Honor. Well, I'm asking what your position is here today, not really what the board ruled. I'm having difficulty reconciling what appear to be two different answers. So just to clarify, Your Honor, the position that I'm putting forward is that of the agency, which is that the period that they're looking forward to see whether it was a reasonable time period is when the agency denied the petitioner, Ms. Lumina's husband's application and the time when she actually applied for asylum in 2008. So she didn't have notice for two years? Well, yes, Your Honor, and that's because the agency makes a finding that irrespective of whether there were extraordinary circumstances that contributed to the failure, that there is a conjunctive dispositive prong under 8 CFR 1208.485, which says that the petitioner will show that this delay was not caused – was not caused by any action or inaction that was intentionally created. What's the evidence that this was a tactical decision? That's a very interesting way to describe what happened here. Well, on page 252 – It would be more accurate, wouldn't it, to say it was a tactical omission if there is such a thing? Well, it's inaction or action, I believe the regulation states, Your Honor, and – Well, what makes it tactical? What possible benefit could she achieve by not doing anything? So, Your Honor, I'm unable to say what Ms. Lumina's thought process was in deciding to rely – I'm speaking objectively. Objectively. What could any person achieve? Without creating a general violation, maybe she didn't want to pay for her own attorney to sit through a consultation. Maybe she thought that her husband's claim was strong enough, and so they decided that they would go forward. Well, if you don't ask the question, you don't get a bad answer, which, if you can rely on it, means she gets to stay in the country longer. So that's a tactical reason right there. Right. Hide your head in the sand, and so long – if you really want to know, you call the agency and say, hey, what's going on with my husband's application, right? Right. And, Your Honor, just to point out again – That's the theory, anyway. Yes. And – But she did ask the attorney, and he said, don't bother? That doesn't count? Well, not in terms of ineffective assistance of counsel claim for her, because – That's the problem. Right. The fact is, is she went along with her husband's attorney, and I don't – you know, on the face of it, it doesn't sound like that's an unreasonable thing to do, money saving. I mean, she could have – presumably, he would have charged the same thing. The money saving was just my personal opinion, not necessarily in the record, Your Honor. But just to point again to – But at some point, they lost track of the attorney. I mean, she knew that at some point, the husband couldn't get a hold of the attorney anymore. That's correct. And still, she didn't make any attempt or diligent efforts, which again goes to Viridiana, the facts in Viridiana, where that petitioner did reach out several times to the immigration consultant, and in that case, the court found that the case was compelling and remanded it to the board. Okay. Thank you. Okay. I think you're out of time. Do you want to give us a site where you say the immigration judge told her to wait till the second petition? Yes. It's on the record. And if I could clarify my stance on that, on the record at page 104 through 105. 104 and 105? Yes. And again – Can you clarify that answer? Sure. The immigration judge stated at that time – she, through her attorney, stated that she would be intending to file her asylum application. The immigration judge stated at that time, essentially, he prescribed the filing schedule for her as the next calendar date. Okay. Thank you. Yes. Case just argued. We'll stand submitted.
judges: Davis, Kozinski, Fisher